EXHIBIT A

12/4/2020 2:12 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 48635638
By: Carolina Salgado
Filed: 12/4/2020 2:12 PM

CAUSE NO. _____

| | | |
|---|---|---|
| **ARTURO MEDRANO** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **VS.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| | § | |
| **METTLER-TOLEDO, LLC** | § | **____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

COMES NOW, Plaintiff, Arturo Medrano, complaining of Defendant, Mettler-Toledo, LLC (hereinafter referred to as "Defendant" or "Mettler-Toledo"), and files his Original Petition and Request for Disclosure, and in support of the same would respectfully show the Court the following:

### I.  DISCOVERY LEVEL

1.1     Pursuant to Rules 190.1 and 190.3 of the Texas Rules of Civil Procedure (all rules mentioned herein refer to the Texas Rules of Civil Procedure, unless otherwise indicated), discovery is intended in this lawsuit to be conducted under Level 2 and Plaintiff affirmatively pleads that he seeks monetary relief over $250,000 but not to exceed $1,000,000, at this time.

### II.  PARTIES

2.1     Plaintiff, Arturo Medrano, is a citizen and resident of Harris County, Texas.

2.2     Defendant, Mettler-Toledo, LLC, is a Foreign For-Profit Limited Liability Company registered to transact business in Texas. Defendant operates its principal office and principal place of business in 1900 Polaris Pkwy, Columbus, Ohio 43240, and may be served with process through its registered agent CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### III.  MISNOMER/ALTER EGO

3.1     In the event any parties are misnamed or are not included herein, it is Plaintiff's

contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter

egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should

be pierced to hold such parties properly included in the interest of justice.

## IV.   JURISDICTION AND VENUE

4.1     This Court has subject-matter jurisdiction over this case under its general

jurisdiction as conferred by the Texas Constitution, because the amount in controversy is within

this Court's jurisdictional limits, and because no other Court has exclusive jurisdiction over this

case.

4.2     This Court has general personal jurisdiction over Defendant because its contacts

with Texas are so voluminous, continuous, and systematic that Defendant is essentially at home in

Texas.

4.3     This Court has specific personal jurisdiction over Defendant because Defendant has

purposefully availed itself of the right to do business in this State by conducting business activities

as a result of which Plaintiff was injured and Plaintiff's claims arise from these contacts. Defendant

was hired to perform work in Harris County, Texas and was so engaging in performing services

for the Stolthaven Houston Terminal located in Harris County, Texas at the time of this incident.

4.4     Venue is proper in Harris County, Texas under TEX. CIV. PRAC. & REM. CODE §

15.002(a)(1) because Harris County is the county in which all or a substantial part of the events

giving rise to the claim occurred.

4.5     The federal courts lack jurisdiction over this suit. Plaintiff's claim raises no federal

question, nor does Plaintiff seeks relief under a federal law, statute, regulation, treaty, or the

Constitution. Accordingly, Plaintiff's right to relief does not depend on the resolution of a

substantial question of federal law. Further, this lawsuit cannot be removed because there is no

complete diversity, as Plaintiff and Defendant are both Texas residents. Therefore, removal would be improper.

## V.   FACTS

5.1   On or about the afternoon of July 10, 2020, Plaintiff Arturo Medrano (hereinafter "Plaintiff") was injured while working at the Stolthaven Houston Terminal ("Terminal") in the Houston Ship Channel, located at 15602 Jacintoport Boulevard, Houston, Texas 77015.

5.2   Mettler-Toledo employees were onsite working at the Stolthaven Houston terminal, servicing large industrial scales at the plant.

5.3   Plaintiff was assisting an Mettlor-Toldeo employee with putting wedges under some of the scale's metal component parts, as is required when servicing the scale. The Mettler-Toledo employee, however, hit the drop lever while Stolthaven Houston employees were putting the wedges under the scale. This caused the subject scale to drop on and sever Plaintiff's finger.

## CAUSES OF ACTION

## VI.   NEGLIGENCE

6.1   Mettler-Toledo had a duty to exercise the degree of care that a reasonably prudent company in its industry would use to avoid harm to others under circumstances similar to those described herein. Mettler-Toledo also had a duty to hire qualified individuals and provide adequate training and supervision to its employees to avoid them committing acts that endanger the health of people assisting them.

6.2   On the occasion in question, Mettler-Toledo breached its duty in one or more of the following ways:

(1)   In failing to install, maintain, and use methods, processes, devices, and safeguards that are reasonably necessary to protect the life, health, and safety of people assisting its employees;

3

(2)     In failing to provide its employees with adequate training in the operation and service of a large industrial scale;

(3)     In failing to train its employees to instruct and oversee the proper operation and service of a large industrial scale;

(4)     In failing to provide its employees with adequate supervision in the operation and service of a large industrial scale;

(5)     In failing to take all other actions reasonably necessary to make the process of operating and servicing a large industrial scale safe; and

(6)     In any other negligent acts and omissions.

6.3     Each and all of the above and foregoing acts, both of omission and commission, singularly or in combination with others, proximately caused the occurrence made the basis of this suit and Plaintiff's injuries and damages pled herein.

## VIII.   DAMAGES

8.1     As a result of Defendant's negligence, Plaintiff suffered serious and permanent injuries. Plaintiff brings this action for the following damages:

a.      Past physical pain and suffering of Plaintiff, and physical pain and suffering that he will, in all probability, suffer in the future;

b.      Past mental anguish of Plaintiff, and mental anguish that he will, in all probability, suffer in the future;

c.      Past and future physical impairment of Plaintiff;

d.      Past and future physical disfigurement of Plaintiff;

e.      The medical expenses that Plaintiff has incurred in the past and medical expenses he will, in all reasonable probability, continue to incur in the future;

f.      Past and future lost earnings and loss of wage-earning capacity;

g.      Any and all other damages to which Plaintiff may be justly entitled; and

h.      Judgment for all other relief to which Plaintiff deems himself entitled.

4

8.2     Plaintiff seeks both pre- and post-judgment interest as allowed by law, for all costs of court, actual damages, compensatory damages, and all other relief, both in law and in equity, to which Plaintiff may be entitled.

### IX.     PRESERVATION OF EVIDENCE

9.1     Plaintiff hereby requests and demands that Defendant preserves and maintains all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including but not limited to: all machinery, equipment and tools being used at the time of the subject incident, all protective equipment that was used and/or made available for use at the time of the subject incident, photographs, videotapes, audiotapes, recordings of any kind, medical records, contract(s) for the work being performed, employment files of employees and supervisors involved; bills, estimates, invoices, checks, measurements, equipment, inspections of the scene, complaints, maintenance records, repair estimates, records, correspondence, memoranda, files, facsimiles, emails, dispatcher transmissions, GPS data, 911 communications, voice mail, text messages, any items which were removed from the site of the scene after the incident, investigations, incident reports, cellular telephone records, calendar entries, diary entries, log books, insurance policies, witness statements; and any electronic image, data, or information related to the referenced incident or Plaintiff himself.

9.2     Failure to maintain such items will constitute a "spoliation" of the evidence.

### X.     NOTICE OF AUTHENTICATION OF DOCUMENTS

10.1    The Plaintiff hereby provides actual notice to Defendant that the Plaintiff will use any or every document produced by the Defendant in response to written discovery in a pretrial proceeding or at trial. Pursuant to TEX. R. CIV. P. 193.7, the Defendant's production of a document in response to written discovery authenticates the document for use against the Defendant unless

5

— within 10 days or longer or shorter time ordered by the Court – the Defendant objects to the authenticity of the document, or any part of it, stating the specific basis for the objections. An objection must be either on the record or in writing and must have a good faith factual and legal basis. An objection made to the authenticity of only part of a document does not affect the authenticity of the remainder.

## XI.    REQUEST FOR DISCLOSURE

11.1     Pursuant to Rule 194, the Defendant is requested to disclose, within **fifty (50) days** of service of this request, the information or material described in Rule 194.2.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited in terms of law to appear and answer herein, that upon final trial and hearing hereof, the Plaintiff recovers damages from Defendant in accordance with the evidence; that Plaintiff recovers costs of court herein expended; that Plaintiff recovers interest to which Plaintiff is justly entitled under the law, both prejudgment and post-judgment; that Plaintiff recovers actual damages; that Plaintiff is entitled to recover compensatory damages; and for such other further relief, general and special, both at law and in equity, to which Plaintiff may be justly entitled.

*[Signature on following page]*

Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS,**
**SORRELS, AGOSTO, AZIZ & STOGNER**

By:    */s/ Lena B. Laurenzo*
         Benny Agosto, Jr.
         Texas Bar No.: 000794981
         bagosto@awtxlaw.com
         Lena B. Laurenzo
         State Bar No. 24097973
         llaurenzo@awtxlaw.com
         800 Commerce Street
         Houston, Texas 77002-1776
         Telephone: (713) 222-7211
         Facsimile: (713) 225-0827

**ATTORNEY FOR PLAINTIFF**

7

CAUSE NO. _____

| | | |
|---|---|---|
| ARTURO MEDRANO | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| METTLER-TOLEDO, LLC | § | ____ JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST SET OF DISCOVERY TO
## DEFENDANT METTLER-TOLEDO, LLC

TO:   Defendant, Mettler-Toledo, LLC, by and through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

Pursuant to Rules 196, 197 and 198 of the Texas Rules of Civil Procedure, Plaintiff, Arturo Medrano, in the above-styled and numbered cause, serves these First Request for Production, First Request for Admissions, and First Set of Interrogatories upon Defendant Mettler-Toledo, LLC. The responses to each request shall be made separately and fully in writing, Defendant shall produce for inspection and copying the documents and tangible things requested herein. Defendant's responses shall be served upon counsel for Plaintiff within **fifty (50) days** after service of these discovery requests as required by Rule 196.3. The definitions and instructions following are applicable to these First Request for Production, First Request for Admissions, and First Set of Interrogatories. Defendant shall provide the requested documents for inspection and copying at the law offices of Abraham, Watkins, Nichols, Sorrels, Agosto, Aziz & Stogner, 800 Commerce Street, Houston, Texas 77002.

Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS,
SORRELS, AGOSTO, AZIZ & STOGNER**

By:    */s/ Lena B. Laurenzo*
        Benny Agosto, Jr.
        Texas Bar No.: 000794981
        bagosto@awtxlaw.com
        Lena B. Laurenzo
        State Bar No. 24097973
        llaurenzo@awtxlaw.com
        800 Commerce Street
        Houston, Texas 77002-1776
        Telephone: (713) 222-7211
        Facsimile: (713) 225-0827

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been served on all parties contemporaneously with Plaintiff's Original Petition and Request for Disclosure.

*/s/ Lena Laurenzo*

_____
Lena B. Laurenzo

2

## DEFINITIONS AND INSTRUCTIONS

1.    Under the Texas Rules of Civil Procedure, you are under a duty to amend a prior answer to an interrogatory if it obtains obtain information upon the basis of which:

    a.    You know that the answer was incorrect when made; or

    b.    You know that the answer, though correct when made, is no longer true and the circumstances are such that a failure to amend the answer is in substance a knowing concealment.

2.    The terms **"you," "your," "yours", "Defendant,"** and **"Mettler-Toledo"** shall mean, unless otherwise specified in a particular request, Defendant Mettler-Toledo, LLC named in this lawsuit and/or any agent, representative, employee, your insurance providers, their agents, their employees, your attorneys, your accountants, your investigators, or any individual and/or entity action on your behalf.

3.    The terms **"document"** or **"documents"** shall mean all documents and tangible things, in the broadest sense allowed under the Rules of Civil Procedure, and include, but are not limited to, information contained in computer storage and other electronic information retrieval systems, drafts, originals and nonconforming copies which contain deletions, insertions, handwritten notes or comments, however produced or reproduced, or to any other tangible permanent record, and without limitation, shall include, among other things, accident reports, medical reports, work safety logs, employment records, all marketing material, bids, letters, correspondence, records of discussions, conferences, memoranda, notes, telegrams, summaries, telephone logs and records, teletypes, bank checks, bank deposits and withdrawal slips, bank credit and debit memoranda, records, telexes, private wire messages, communications, calendars, diaries, appointment books, agenda of meetings, conversations, schedules, reports, studies, appraisals, analyses, lists, surveys, budgets, financial statements, financial projections, financial calculations, financial audits, contracts, agreements or proposed agreements, confidentiality agreements, periodicals, charts, graphs, interviews, speeches, transcripts, depositions, press releases, brochures, books of account, affidavits, communications with government bodies, invoices, notes and minutes of meetings of Boards of Directors, audit committees, financial committees and executive committees, interoffice communications, results of investigations, working papers, newspaper or magazine articles, records of payments, releases, receipts, computer programs and printouts, maps, blue prints, liftings, tax returns, vouchers, subpoenas, papers similar to any of the foregoing and other writings of every kind and descriptions (whether or not actually used) in your possession, custody or control; and other records of voice recordings, film, tapes, and other data compilations from which information can be obtained whether these are resident on paper or other media such as magnetic, electronic, or optical.

4.    You are to produce all documents that are in the possession, control or custody of you or in the possession, control or custody of any attorney for you. This includes, but is not limited to, documents in the possession, custody, control of you, your attorneys, agents,

employees, investigators, consultants, and experts, as well as any firm, subsidiary, parent, affiliated, or related entity, and any other entity or business in which you own a controlling interest or over which you exercise control. You are required to use reasonable diligence to locate the documents, including those that are not in your immediate possession. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

5. With respect to hard copy or paper production, all documents responsive to this request shall be produced in their original form.

6. All duplicates or copies of documents are to be provided to the extent they have handwriting, additions, or deletions of any kind different from the original documents being produced.

7. Unless otherwise indicated, documents requested by this Document Request are documents referring to, relating to, or prepared during the last ten years.

8. This Document Request requires you amend or supplement your production of documents called for by this Document Request.

9. In the event that any document requested has been lost or destroyed, you shall identify such document and, in addition, specify (a) the date of its loss or destruction; (b) the reason for its destruction; (c) the person authorizing its destruction; and (d) the custodian of the document immediately preceding its loss or destruction.

10. Plaintiff requests that you provide a privilege log containing the descriptions specified in Rules for each document not produced because of a claim of privilege. Such descriptions shall specify in writing with respect to each purportedly privileged document, its author(s), recipient(s), nature (e.g. memorandum, letter), date, subject matter, the nature of the claimed privilege and all facts you rely on to support the claim of privilege. Plaintiff requests that you provide such descriptions within fifteen days after service of your response, or responses, to these documents requests.

11. If you object to any part of a document request, you shall produce all documents, or any portions thereof, covered by the request to which you do not object.

12. Responsive Electronically Stored Information ("ESI") shall be produced in native form; that is, in the form in which the information and/or documents were customarily created, used, and stored by the native application employed by you in the ordinary course of business.

   a. If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, you may produce in a near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form. Static image production

formats serve as near-native alternatives only for documents that are natively static images (i.e., photographs and scans).

13.    The terms "**and/or**", "**or**", and "**and**" are used inclusively, not exclusively.

14.    The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral gender. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

15.    The terms "**identify**" or "**identity**" when used herein means:

    a.    With respect to a **natural person,** all that you know or that you can determine about his or her full name or names, title, present or last known employer or job description, and present or last known home and business addresses.

    b.    With respect to an **entity or organization which is not a natural person,** all that you know or that you can determine about its full name or names, dates and places of formation, principal places of business, and business addresses.

    c.    With respect to **documents,** all that you know or that you can determine about title, type of documents, date, author, addressee, recipients, any identifying numbers on such documents, substance of its contents, subject matter, present location, present custodian, and each person who has possession, custody, or control over each copy of each document.

    d.    With respect to a **physical object,** all that you know or that you can determine about its common name, identifying number(s), manufacturer and date of manufacture of the object.

    e.    With respect to an **event,** all that you know or can determine about the date, time, place, participants, actions taken, and results obtained.

16.    The terms "**custodial document**", "**custodial documents**", "**custodial file**", or "**custodial files**" shall mean all documents maintained by your current employees and past employees (while they were employed). For example, custodial documents include each document on and/or in an individual employee's computer, voice mail, office desk, office filing cabinet or storage system, file storage maintained by that person outside of his/her office, and any other location in which that employee keeps or kept documents. If you have failed to preserve or no longer have custodial documents for any current or past employee implicated by these Requests, please comply with Instruction 5 above.

17.    The terms "**communication**" or "**communications**" includes, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer, or exchange of information of any nature whatsoever, by or to whomever, whether oral, written, or face-to-face, by telephone, U.S. mail, personal delivery, electronic mail, computer, or otherwise,

specifically including, without limitation, correspondence, conversations, dialogue, discussions, interviews, consultations, agreements, and other understandings.

18. The term **"information"** should be construed in the broadest possible sense. It is intended reference both facts and applicable principles. This term should not be construed to be limited by any method of acquisition or compilation and should, therefore, be construed to include oral information as well as documents.

19. The terms **"person"** or **"persons"** includes, without limitation, a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

20. The terms **"entity"** or **"entities"** includes, without limitation, any corporation, corporate form (such as a limited partnership, limited liability partnership, or limited liability company), parent company, affiliate, subsidiary, partner, member, venture, partnership, or any other structure (or a chain of successive entities) that conducts business, has conducted business, or anticipates conducting business.

21. The terms **"expert"**, **"experts"**, **"expert witness"**, or **"expert witnesses"** shall mean any person or entity who may be called upon as an expert witness at trial and any person or entity used for consultation who is not expected to be called as a witness at trial, but whose opinions, work product, or mental impressions have been reviewed or relied upon by a testifying expert.

22. The terms **"concerning"** or **"relating to"** shall mean referring to, reflecting or related in any manner, logically, factually, indirectly or directly to the matter discussed.

23. The terms **"describe"** or **"describing"** when used in reference to any documents or tangible evidence includes, without limitation, stating the title or name, date, time, author of documents, the common name, identifying number, manufacturer and date of manufacture of any object and the name and address of the person(s) having possession, custody, or control of such at the present time.

24. The terms **"evidencing"** shall mean constituting, reflecting, memorializing, referring to and/or supporting – logically, factually, indirectly or directly – the matter discussed.

25. The term **"damages"** shall mean all claims for relief alleged by Plaintiff in the latest Complaint.

26. The terms **"incident"**, **"occurrence"**, and **"incident in question"** shall mean, unless otherwise indicated, the events that occurred on July 10, 2020 that give rise to this lawsuit as described in Plaintiff's latest filed petition.

27. The term **"subject premises"** shall mean the premises where the incident that forms the basis of Plaintiff's latest filed petition occurred.

28. The term **"subject scale"** shall mean, unless otherwise indicated, the large industrial scale involved in the subject incident that injured Plaintiff.

29. The term **"subject task"** shall mean, unless otherwise indicated, servicing of the subject scale and accompanying acts directed at its completion, such as what Plaintiff was performing at the time of the incident.

30. The term **"subject employee"** shall mean your employee present at the subject premises for servicing the subject scale.

31. **If you have any objections such as vague, overbroad, etc., please do not object. Instead, call me and I will try to consider your objections and specific concerns in hopes of working such disputes out amicably.**

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO
## DEFENDANT METTLER-TOLEDO, LLC

1.   Produce copies of all policies of insurance that cover the occurrences in question, including but not limited to general liability coverage(s), umbrella and excess coverage(s), which were in effect on the date of the incident made the basis of this suit.

2.   Produce all correspondence and any other related documents by and between Defendant and its any insurance company which in any way relates to, directly or indirectly, coverage for Plaintiff's injuries and damages arising out of the incident made the basis of this suit.

3.   Produce a complete copy of any investigation report, incident report, injury report, accident report, or root cause analysis for the incident, prepared by Defendant and/or any third-party representing Defendant pertaining to the incident.

4.   Produce all investigation reports, root cause analysis and/or reports relating to the incident in question created or reviewed by any third party.

5.   Produce copies of all documents sent to you notifying you of the events which resulted in this lawsuit.

6.   Produce copies of all documents you produced to any government agency in relation to Plaintiff's injuries or the incident.

7.   Produce copies of all documents any government agency sent to you in relation to Plaintiff's injuries or the incident.

8.   Produce copies of all federal, county, city, state, police, or other governmental reports and/or investigations concerning or regarding the incident made the basis of this suit.

9.   Produce copies of all objects, photographs, reports, statements, or otherwise described documents or objects in the possession of Defendant in reference to the incident. This specifically includes any and all reports and written or electronically recorded statements made by Defendant(s) to any other person, organization or governmental entity.

10.  Please provide a copy of any drawings, sketches, diagrams, checklists, and other documents etc. that pertain to the task that was being conducted at the time of Plaintiff's injury, including but not limited to job safety analysis documents, checklists, measurements, calculations, plans, etc.

11.  Produce copies of all correspondence between you and any other person concerning the incident in question.

12.  Please provide copies of any and all witness statements taken by Defendant, any third-party representing Defendant and any statements in the possession of Defendant pertaining to the incident that resulted in Plaintiff's injury.

8

13. Produce all written or recorded statements, and summaries thereof, given or taken by any person in connection with the incident in question, the Plaintiff, or the filing of this suit.

14. Produce all correspondence, fax, memoranda, invoices, contracts, telephone messages and/or email by and between any and all parties to this case which in any way concerns, refers to, or relates to the incident in question.

15. Produce all reports and written or electronically recorded statements made by you and/or Defendant to any other person, organization, entity, or governmental or regulatory agency or authority in relation to the incident in question.

16. Produce the entire investigation file of this Defendant, or its agents and/or representatives, prepared or assimilated prior to the date of filing of this lawsuit that relate to the incident in question, Plaintiff, and/or Plaintiff's claims, injuries, and/or damages made the basis of this suit.

17. Produce all documents which identify the members or participants in any incident or injury investigation, or root cause determination performed by Defendant or at the request of Defendant.

18. Produce a copy of the employment file of anyone written up as a result of the events underlying this lawsuit.

19. Produce a copy of the employment files of subject employee and his supervisors involved in the task, or required to be supervising the task, during which Plaintiff was injured.

20. All documents evincing any and all warnings provided for the subject scale and subject task.

21. Produce copies of any written materials, including manuals, that relate to the safety of those involved in the process of servicing the subject scale.

22. Please provide a copy of any written service instruction or manual for the subject scale involved in Plaintiff's incident that was available at the time of the incident.

23. Produce all records of any previous incident(s), including near misses, involving the subject scale.

24. Produce all photographs of the subject scale, before and/or after the incident occurred.

25. Please provide a copy of any surveillance/security video(s) for the day of the incident that showed the subject scale involved in the incident that injured Plaintiff.

26. Produce all documents, including emails, faxes, and other correspondence that relate to the subject incident.

27. Produce all documentation created by you and/or someone else related to safety instructions for the subject task or subject scale.

28. Produce all documents identifying Defendant's policies and procedures for inspecting, identifying, and eliminating hazards potentially arising from the subject task or subject scale and required corresponding warnings.

29. Produce all documents relating to complaints or operational issues about the subject scale.

30. Produce copies of any applicable safety standards or codes, whether promulgated by a government agency, industry association, or internally by Defendant, governing the subject task and use or servicing of the subject scale.

31. Please provide a complete copy of any JSA (Job Safety Analysis)/JHA (Job Hazard Analysis) that was completed in preparation for the subject task.

32. Produce all documents evidencing your role in supervising the subject task.

33. Produce all training and/or instruction manuals, videos, audio recordings, and/or photographs provided by you to any person regarding the performance of the subject task.

34. Produce all documents evincing any supervision by you over anyone on the subject premises regarding training, warnings, and other similar safety measures for the performance of the subject task.

35. Please provide copies of any and all training certificates held by subject employee.

36. Produce all documents that concern, refer to, or relate to Plaintiff.

37. Produce copies of any and all medical records obtained by Defendant pertaining to Plaintiff.

38. Produce all reports prepared regarding treatment rendered to Plaintiff at or near the time of the incident made the basis of this lawsuit.

39. Produce copies of all accident, injury, disability or injury reports on Plaintiff.

40. Produce all medical records that refer to Plaintiff, including medical records that predate the occurrence in question.

41. Produce copies of all documents concerning communications between you and Plaintiff.

42. Produce all surveillance of the Plaintiff regardless of the medium (video, photo, written, and/or recorded in any other tangible manner).

43. Produce all reports, briefs, and/or memos concerning surveillance of Plaintiff.

44. Produce all communications regarding this case and surveillance of Plaintiff including all emails and correspondence.

45. Produce all billing and time records of any person or firm performing any work on this case as it relates to surveillance of Plaintiff.

46. Produce all video footage stored on any media such as hard drives, optical disks, etc., regardless of format that relate to this case including surveillance of Plaintiff.

47. Produce all documents which identify all video and still photography equipment utilized in this case for surveillance of Plaintiff. This request includes manufacturer, model numbers and serial numbers.

48. Produce all documents which identify any computer used for video editing in this case, including any surveillance of Plaintiff. This request includes software identification and version used for editing.

49. Produce all documents which identity of all persons who participated in the editing and rendering of any video clips in this case, including surveillance of Plaintiff.

50. Produce all documents which identify of all persons who reviewed video and photographs in this case, including surveillance of Plaintiff.

51. Produce all documents and other materials reviewed for purposes of surveillance on Plaintiff.

52. Produce all summaries, reports, and files reviewed by each person who may testify as an expert witness at trial.

53. Produce all documents prepared by each expert witness who has been consulted by you and whose opinions have been reviewed by an expert witness who may testify at trial.

54. Produce copies of all publications which any expert witness obtained or consulted by you has contributed to or on which he or she will rely, which relate in any way to the subject matter or opinions of the expert witness.

55. Produce copies of all documents evidencing communications between you and each expert witness who may testify at trial.

56. Produce a current copy of the curriculum vitae or resume of any person whom you may call as an expert witness in the trial of this case.

57. Produce a current curriculum vitae or resume of each person whose opinions or impressions have been reviewed or relied upon by any person who may be called to testify in the trial of this case.

11

58. Produce a current list of the cases, including the cause number, of all trial and deposition testimony given in the past ten (10) years by each person whom you may call as an expert witness in the trial of this case in which such expert discussed or described mental impressions or conclusions that relate to the subject matter of this lawsuit.

59. Produce a current list of the cases, including the cause number, of all trial and deposition testimony given in the past ten (10) years by each person whose opinions or impressions have been reviewed or relied upon by any expert who may be called to testify in the trial of this case in which such person discussed or described mental impressions or conclusions that relate to the subject matter of this lawsuit.

60. Produce all transcripts and video recordings of deposition or trial testimony given in the past ten (10) years by each person whom you may call as an expert witness in the trial of this case in which such expert witness discussed or described mental impressions or conclusions that relate to the subject matter of this lawsuit.

61. Produce all transcripts and video recordings of deposition or trial testimony given in the past ten (10) years by each person whose opinions or impressions may have been reviewed or relied upon by any expert who may be called to testify in the trial of this cause in which such person discussed or described mental impressions or conclusions that relate to the subject matter of this lawsuit.

62. Produce a current list of works written or published by each person whom you may call as an expert witness in a trial of this case.

63. Produce copies of any document that any expert witness you may call to testify at trial of this case has reviewed and/or will utilize to aid testimony.

64. Produce copies of any document or other item an expert witness you may call to testify at trial of this case has reviewed or relied upon which relates to or in any way concerns the Plaintiff's damages or injuries suffered by Plaintiff.

65. Produce copies of any document that any expert witness you may call to testify at trial of this case has reviewed or relied upon in formulating his/her opinions that relates to or concerns this litigation in any way.

66. Produce copies of any and all charts, plans, photographs, or other documents intended to be introduced into evidence on the issues of liability or damages.

67. Produce all documents which you have been asked to identify and/or to which you have made reference or identified in your responses to Plaintiff's Interrogatories to you.

68. Produce all documents supporting any defenses (affirmative or otherwise) raised by you to the allegations set forth in Plaintiff's latest Petition.

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
## DEFENDANT METTLER-TOLEDO, LLC

1.  Describe in detail the work that Plaintiff was performing at the time of the incident and all training (written or otherwise recorded) that Plaintiff allegedly received to perform such work safely.

2.  Has Defendant been sued in the correct name? If not, state the correct name.

3.  Provide a detailed explanation of the cause of the incident and Plaintiff's injuries. Include in your explanation any names of any involved witnesses, parties, or machinery and equipment (including but not limited to the subject scale).

4.  If you claim that the incident resulted from Plaintiff's own contributory negligence, fault, lack of care, inattention to duties, or failure to take ordinary precautions commensurate with his own safety, please set forth fully and specifically the facts upon which you rely for those claims. Also, identify any documents supporting your claim.

5.  If you contend that some person, thing, or entity other than either Plaintiff or yourself and subject employee, by some act or omission, caused or contributed to cause the incident in question in any way, no matter how slight or small, or the injuries allegedly resulting there from, identify that person, entity, or thing.

6.  Have you investigated the cause or causes of the incident made the basis of this lawsuit? If your answer is in the affirmative, please identify each and every person conducting the investigation(s), the date(s) on which the investigation(s) were performed, and who was present during the investigation(s).

7.  If in the last ten (10) years Defendant has been sued in any other lawsuit involving events related to a person being injured while servicing or assisting with servicing the subject scale or a similar scale, please give the names of all parties to each such litigation, as well as the cause number and county in which Defendant was sued.

8.  Please give the name, address and telephone number of every person known, or reasonably believed by you, to have any discoverable knowledge of the events and incident giving rise to this lawsuit. Include the name, job title, and last known contact information of subject employee, that employee's supervisor(s) and other employees involved in the subject task during which Plaintiff was injured was in or near the location of the incident.

9.  State when, where, and under what circumstances you first became aware that Plaintiff was claiming to have sustained the injuries made the basis of this lawsuit. Include the name, job title, and last known contact information of any of your employee(s)/former employee(s) who was notified of this incident.

10. Give the name, employer, employer's address, last-known residential address and last-known residential telephone number of each person from whom you have taken a

13

written and/or recorded statement with reference to the incident underlying this lawsuit. Please list each applicable person, provide the date the statement was taken, the location where the statement was taken, and the name, address, job title, employer and employer's address of the person to whom the statement was given.

11.     Describe in detail your role in the supervision of your employees involved in the subject task during which Plaintiff was injured, and include the names of any supervisors involved.

12.     Describe in detail your role in providing safety training to persons involved in the process of servicing the subject scale on the day of the incident, such as the subject employee, Plaintiff, and his co-workers, including the names of those who lead/provided the training.

13.     Name all documents you provided to anyone regarding the safety and service of the subject scale.

**PLAINTIFF'S REQUEST FOR ADMISSIONS TO**
**DEFENDANT METTLER-TOLEDO, LLC**

1.    Admit Defendant has been properly named in Plaintiff's most recently filed Petition.

2.    Admit the subject employee was your employee at the time of the incident.

3.    Admit that, at the time the subject incident occurred, you were in control of the subject scale involved in the subject incident.

4.    Admit that, at the time the subject incident occurred, you were the owner of the subject scale involved in the subject incident.

5.    Admit that, at the time the incident occurred, you were responsible for the supervision of Plaintiff during the subject incident.

6.    Admit that, at the time the incident occurred, you were responsible for the supervision of the subject employee during the subject incident.

7.    Admit that, at the time of the incident, safety and/or operating manuals did not exist for the subject task.

8.    Admit that, at the time of the incident, safety and/or operating manuals did not exist for the subject scale.

9.    Admit that, at the time of the subject incident, you were responsible for providing hazard warnings regarding the subject task.

10.    Admit that, at the time of the subject incident, you were responsible for providing hazard warnings regarding the subject scale.

11.    Admit that, at the time of the subject incident, you were responsible for providing hazard warnings to Plaintiff regarding the subject task.

12.    Admit that, at the time of the subject incident, you were responsible for providing hazard warnings to Plaintiff regarding the subject scale.

13.    Admit that you failed to give adequate warning to Plaintiff of the dangers associated with the subject task.

14.    Admit that you failed to give adequate warning to Plaintiff of the dangers associated with the subject scale.

15.    Admit that you failed to give any warning to Plaintiff regarding the dangers associated with the subject task.

16. Admit that you failed to give any warning to Plaintiff regarding the dangers associated with the subject scale.

17. Admit that, at the time of the incident, you were responsible for warning people on the subject premises about the dangers associated with the subject scale.

18. Admit that Plaintiff's injuries required medical care.

19. Admit that you take some responsibility for the Plaintiff's injuries in this case.

20. Admit that Plaintiff did not contribute to his injuries sustained in this case.

21. Admit that no one was supervising Plaintiff at the time of the incident.

22. Admit that no one was supervising the subject employee at the time of the incident.

23. Admit your subject employee was negligent during the subject task.

24. Admit subject employee hit the drop lever while Plaintiff was putting the wedges under the subject scale.

25. Admit the subject employee lost control over the gap cover and dropped it on Plaintiff's hand.

26. Admit your employee failed to use proper tools for the subject task.

27. Admit that the injuries sustained by Plaintiff during the subject incident were the result of a failure to warn him of the dangers associated with subject task.

28. Admit that the injuries sustained by Plaintiff during the subject incident were the result of your failure to provide adequate warnings for the subject scale.

29. Admit you performed an investigation of the subject incident.

30. Admit you have photos relevant to the subject incident.

31. Admit no JSA (Job Safety Analysis)/JHA (Job Hazard Analysis) was completed in preparation for the subject task that resulted in the subject incident.

32. Admit you have insurance coverage for this incident.

33. Admit you have primary insurance coverage for this incident.

34. Admit you have excess insurance coverage for this incident.

35. Admit you have umbrella insurance coverage for this incident.

16

## <u>VERIFICATION</u>

THE STATE OF TEXAS          §
                           §
COUNTY OF _____      §


BEFORE ME, the undersigned authority, on this day personally appeared Defendant Mettler-Toledo, LLC's authorized representative _____, and after being duly sworn, upon oath stated that each of the foregoing answers to Plaintiff's First Set of Interrogatories are within his/her personal knowledge and are true and correct.


_____
METTLER-TOLEDO, LLC


SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this ___ day of _____, 2020.

_____
Notary Public, in and for
The State of Texas


_____
Printed or Typed Name of Notary

18